**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

---

ADAIRE CARVANE EVANS,

      Petitioner,

v.                         Case No. 3:19-CV-12801

ROBERT VASHAW,

      Respondent,

_____/

**OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS
AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY**

Petitioner Adaire Carvane Evans, incarcerated at the St. Louis Correctional

Facility in St. Louis, Michigan, seeks the issuance of a writ of habeas corpus pursuant to

28 U.S.C. § 2254.  In his *pro se* application, Petitioner challenges his conviction for

armed robbery,[1] assault with intent to do great bodily harm less than murder,[2] felon in

possession of a firearm,[3] carrying a concealed weapon,[4] discharging a firearm from a

vehicle causing injury,[5] felony-firearm,[6] and being a third felony habitual offender.[7]  For

the reasons that follow, the petition will be denied.

**I. BACKGROUND**

Petitioner was convicted following a jury trial in the Wayne County Circuit Court.

---

[1] Mich. Comp. Laws § 750.529.
[2] Mich. Comp. Laws § 750.84.
[3] Mich. Comp. Laws § 750.224f.
[4] Mich. Comp. Laws § 750.227.
[5] Mich. Comp. Laws § 750.234(a)(1)(b).
[6] Mich. Comp. Laws § 750.227b.
[7] Mich. Comp. Laws § 769.11.

This court recites verbatim the Michigan Court of Appeals' factual summary of the case, since it is presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> This appeal arises out of the armed robbery of Tywone Williams inside his family home in Detroit, Michigan, by defendant and another unnamed individual. After the robbery, defendant and the other individual fled in a gold Oldsmobile driven by a third individual. Williams, along with his friend Izella Fleming, chased after the gold Oldsmobile in a vehicle driven by Fleming's cousin, James Barnes. Barnes eventually caught up to the gold Oldsmobile, first pulling up behind it, then attempting to try to pull in front of it so that it could not go anywhere. However, as Barnes pulled up to the passenger side of the gold Oldsmobile, gunshots rang out, and Barnes saw a flash from a firearm coming from the front of the vehicle. Barnes sustained a non-fatal gunshot wound to the chin area.
>
> *********************************************************************************
>
> Both Barnes and Fleming testified that when defendant left Williams's home, he got into the front passenger seat of the gold Oldsmobile. Barnes further testified that when he pulled up alongside the passenger side of the gold Oldsmobile, he heard gunshots and saw a flash from a firearm coming from the front of the car.

*People v. Evans*, No. 334628, 2018 WL 442852, at * 1- 2 (Mich. Ct. App. Jan. 16, 2018). *lv. to appeal denied* 917 N.W. 2d 371 (Mich. 2018).

Petitioner seeks habeas relief on the following grounds:

I. The petitioner was denied his constitutional right to due process of law under the United States and Michigan constitutions due to the prosecution's failure to introduce sufficient reliable evidence to prove petitioner's guilt beyond a reasonable doubt as to each of his conviction offenses.

II. The petitioner is entitled to relief from judgment and reversal of his convictions because he was deprived of representation by competent counsel, as guaranteed by the federal and state constitutions, US Const, Ams VI, XIV; Const 1963, art 1, §§ 17, 20.

III. Petitioner was denied his state and federal constitutional rights to effective assistance of counsel and to due process where trial counsel had an actual conflict of interest with the prosecutor's witness during the time of defendant's trial; additionally the trial court abused its discretion in not exploring the full depth of the relationship between counsel and the witness,

and how it may or may not affect the proceedings after the matter was brought to the attention of the court prior to the commencement of trial.

IV. Trial counsel did not conduct a meaningful adversarial challenge and did not effectively cross-examine the prosecution's witnesses. Counsel also failed to impeach the credibility of a witness as the initial report was given while the witness was under the influence of narcotics and marijuana. US Const. Amends V, XIV.

V. Petitioner was denied due process of law by the unduly suggestive one-photo lineup procedure; additionally, based on the unduly suggestive identification procedures that were employed in this case, defendant was denied his state and federal constitutional rights to the effective assistance of counsel and due process, where appointed counsel failed to motion to suppress the identification.

VI. The prosecution engaged in prosecutorial misconduct that violated Mr. Evans's Fifth Amendment right to a fair trial when the prosecutor presented false and perjured testimony which violated petitioner's due process rights and resulted in a miscarriage of justice. Additionally, trial counsel provided ineffective assistance of counsel as guaranteed by the constitution for failing to object. US Const, Amends V, VI, XIV; Mich Art. 1, §§ 17, 20.

VII. Petitioner was denied his state and federal constitutional right to due process where he was dressed in jail clothing during trial. At a minimum, Mr. Evans is entitled to an evidentiary hearing. Trial counsel was ineffective for failing to object to the above errors, in violation of defendant's right to effective assistance of counsel under the Sixth Amendment.

## II. STANDARD

28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death

Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas

cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

## III. DISCUSSION

### A. Claim # 1. The sufficiency of evidence claim.

Petitioner first argues that the evidence was insufficient to convict.

It is beyond question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship,* 397 U.S. 358, 364 (1970). But the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding

4

of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979).  A

court need not "ask itself whether *it* believes that the evidence at the trial established

guilt beyond a reasonable doubt."  Instead, the relevant question is whether, after

viewing the evidence in the light most favorable to the prosecution, *any* rational trier of

fact could have found the essential elements of the crime beyond a reasonable doubt.

*Id.* at 318-19 (internal citation and footnote omitted) (emphasis in the original).

When considering a challenge to the sufficiency of the evidence to convict, the

reviewing court must give circumstantial evidence the same weight as direct evidence.

*See United States v. Farley*, 2 F.3d 645, 650 (6th Cir. 1993). "Circumstantial evidence

alone is sufficient to sustain a conviction and such evidence need not remove every

reasonable hypothesis except that of guilt." *United States v. Kelley*, 461 F.3d 817, 825

(6th Cir. 2006) (internal quotation omitted); *See also Saxton v. Sheets*, 547 F.3d 597,

606 (6th Cir. 2008) ("A conviction may be sustained based on nothing more than

circumstantial evidence.").  Moreover, "[c]ircumstantial evidence is not only sufficient,

but may also be more certain, satisfying and persuasive than direct evidence." *Desert

Palace, Inc. v. Costa*, 539 U.S. 90, 100 (2003) (quoting *Rogers v. Missouri Pacific R.

Co.*, 352 U.S. 500, 508 n.17 (1957)); *see also Holland v. United States*, 348 U.S. 121,

140 (1954) (circumstantial evidence is "intrinsically no different from testimonial

evidence," and "[i]f the jury is convinced beyond a reasonable doubt, we can require no

more"); *Harrington,* 562 U.S. at 113 ("sufficient conventional circumstantial evidence"

supported the verdict).

A federal habeas court may not overturn a state court decision that rejects a

sufficiency of the evidence claim merely because the federal court disagrees with the

state court's resolution of that claim.  Instead, a federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the *Jackson* standard. *See Cavazos v. Smith,* 565 U.S. 1, 2 (2011).  "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Id.*  Indeed, for a federal habeas court reviewing a state court conviction, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 566 U.S. 650, 656 (2012).  A state court's determination that the evidence does not fall below that threshold is entitled to "considerable deference under [the] AEDPA." *Id.*

Finally, on habeas review, a federal court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor was observed at trial. *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983).  It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony. *Neal v. Morris*, 972 F. 2d 675, 679 (6th Cir. 1992).  A habeas court therefore must defer to the fact finder for its assessment of the credibility of witnesses. *Matthews v. Abramajtys*, 319 F. 3d 780, 788 (6th Cir. 2003).

Petitioner first argues that there was insufficient evidence to convict him of the assault and firearms charges because there was no evidence that he was the person who fired the gunshots at Mr. Williams, Mr. Barnes, and Ms. Fleming.

Petitioner does not contest that the elements of these offenses were proven but argues that the prosecutor failed to prove that he was the shooter.

Under Michigan law, "[T]he identity of a defendant as the perpetrator of the crimes charged is an element of the offense and must be proved beyond a reasonable doubt." *Byrd v. Tessmer*, 82 F. App'x. 147, 150 (6th Cir. 2003) (citing *People v. Turrell*, 25 Mich. App. 646, 181 N.W.2d 655, 656 (1970)).  Identity of a defendant can be inferred through circumstantial evidence. *See Dell v. Straub,* 194 F. Supp. 2d 629, 648 (E.D. Mich. 2002).

The Michigan Court of Appeals rejected petitioner's claim:

Both Barnes and Fleming testified that when defendant left Williams's home, he got into the front passenger seat of the gold Oldsmobile. Barnes further testified that when he pulled up alongside the passenger side of the gold Oldsmobile, he heard gunshots and saw a flash from a firearm coming from the front of the car. When the foregoing evidence is viewed in a light most favorable to the prosecution, a rational jury could infer that while sitting in the front passenger seat of the gold Oldsmobile, defendant possessed a firearm, which he used to shoot at Barnes. Accordingly, sufficient circumstantial evidence supports defendant's AWIGBH, felon-in-possession, CCW, felony-firearm, and discharging a firearm from a motor vehicle causing injury convictions.

*People v. Evans*, 2018 WL 442852, at * 2.

The circumstantial evidence, when viewed in a light most favorable to the prosecution, established that Petitioner was the person who fired the gunshots at Barnes.  The Michigan Court of Appeals' rejection of this claim was reasonable, precluding habeas relief.

Petitioner next claims that he should not have been convicted of armed robbery because he was not charged as an aider and abettor, even though he was convicted of this offense under a theory that he aided and abetted the principal.

Under Michigan law "being an aider and abettor is simply a theory of prosecution, not a separate substantive offense." *People v. Perry,* 460 Mich. 55, 63, n. 20; 594 N.W.

7

2d 477 (1999).  Petitioner did not need to be charged with being an aider and abettor in order to be convicted of armed robbery.

Petitioner argues that there was insufficient evidence that he aided and abetted in the robbery.  Petitioner argues that the evidence, at most, showed that he was merely present at the time the robbery took place.

The Michigan Court of Appeals rejected this claim:

> When viewed in a light most favorable to the prosecution, the evidence presented at trial is sufficient to establish that defendant "performed acts or gave encouragement that assisted the [principal in the] commission of the crime[.]" Fleming testified that defendant drove himself and the unknown assailant to William's home. The record evidence further confirmed that defendant used his relationship as a family friend of Williams to gain entry to the home, and after he gained access to the home, engaged Williams in a conversation about his Christmas shopping, presumably to distract Williams before the unknown assailant pulled a gun on him. Further, while Williams was lying on the floor after having a firearm pointed in his face, defendant told him to "be cool, be cool," and asked where "Mike," Williams's cousin, was. Notably, defendant did not attempt to stop the unknown assailant from pulling a gun on Williams or taking his money and cellular phone, and ran out of the house with the assailant and got in the get-away vehicle. When the foregoing is viewed in a light most favorable to the prosecution, the evidence presented at trial was sufficient to establish that defendant was not "merely present" at the scene of the armed robbery, but rather aided-and-abetted the principal in the commission of the crime. Accordingly, sufficient evidence supports defendant's armed robbery conviction.

*People v. Evans*, 2018 WL 442852, at * 3.

The elements of armed robbery under Michigan law are: (1) an assault, and (2) a felonious taking of property from the victim's presence or person, (3) while the defendant is armed with a weapon. *See O'Guin v. Foltz,* 715 F. 2d 397, 400 (6th Cir. 1983). To support a finding under Michigan law that a defendant aided and abetted in the commission of a crime, the prosecutor must show that:

> 1. the crime charged was committed by the defendant or some other person;
> 2. the defendant performed acts or gave encouragement that assisted the commission of the crime; and
> 3. the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time he gave aid and encouragement.

*Riley v. Berghuis,* 481 F. 3d 315, 322 (6th Cir. 2007)(citing *People v. Carines*, 460 Mich. 750, 757-58; 597 N.W. 2d 130 (1999)).

In order to be guilty of aiding and abetting under Michigan law, the accused must take some conscious action designed to make the criminal venture succeed. *Fuller v. Anderson,* 662 F. 2d 420, 424 (6th Cir. 1981).  Aiding and abetting describes all forms of assistance rendered to the perpetrator of the crime and comprehends all words or deeds which might support, encourage, or incite the commission of the crime. *People v. Turner*, 213 Mich. App. 558, 568; 540 N. W. 2d 728 (1995).  The quantum or amount of aid, advice, encouragement, or counsel rendered, or the time of rendering, is not material if it had the effect of inducing the commission of the crime. *People v. Lawton,* 196 Mich. App. 341, 352; 492 N. W. 2d 810 (1992).

To be convicted of aiding and abetting, the defendant must either possess the required intent to commit the crime or have participated while knowing that the principal had the requisite intent; such intent may be inferred from circumstantial evidence. *People v. Wilson*, 196 Mich. App. 604, 614; 493 N. W. 2d 471 (1992).  The intent of an aider and abettor is satisfied by proof that he knew the principal's intent when he gave aid or assistance to the principal. *People v. McCray*, 210 Mich. App. 9, 14; 533 N. W. 2d 359 (1995).  An aider and abettor's state of mind may be inferred from all of the facts and circumstances, including close association between the defendant and the

9

principal, the defendant's participation in the planning and execution of the crime, and evidence of flight after the crime. *Turner,* 213 Mich. App. at 568-69.

Mere presence, even with knowledge that a crime is being committed, is insufficient to establish that a defendant aided and abetted in the commission of the offense. *People v. Norris*, 236 Mich. App. 411, 419-20; 600 N. W. 2d 658 (1999); *Fuller v. Anderson*, 662 F. 2d at 424. "[H]owever, a claim of mere presence is not a 'catch-all excuse' to defeat an inference of guilt beyond a reasonable doubt. In evaluating a 'mere presence' defense, a factfinder must distinguish, based upon the totality of the circumstances, between one who is merely present at the scene and one who is present with criminal culpability." *See Long v. Stovall*, 450 F. Supp. 746, 754 (E.D. Mich. 2006)(internal citation omitted). An aider and abettor who is intentionally present during the commission of a crime may be silent during the crime's commission, "but by his demeanor, or through behavior and acts not directly related to the crime, provide 'moral support' that is recognizable to, and relied upon by, the principal. Such acts may be silent and may not be overt but may still amount to more than 'mere' presence." *Sanford v. Yukins,* 288 F. 3d 855, 862 (6th Cir. 2002). Michigan's "broad definition" of aiding and abetting "easily encompasses situations where the alleged aider and abettor, although silent and not committing acts directly related to the crime, was not 'merely' present, but providing emotional encouragement and support." *Id.*

In the present case, there was sufficient evidence for a rational trier of fact to conclude that Petitioner aided and abetted in the robbery and was not merely present at the time of the crime. First, Petitioner and the unknown assailant arrived at Mr. Williams' house together, which would raise "a compelling inference that they were

previously acquainted." *Davis v. Lafler*, 658 F.3d 525, 533 (6th Cir. 2011).  Secondly, Petitioner engaged in an overt act which indicated his involvement in the robbery, when he told Mr. Williams to "be cool" after the unknown assailant had ordered Mr. Williams to the ground at gunpoint.  Petitioner also asked Mr. Williams about where his brother was, raising an inference that Petitioner was attempting to make sure that Mr. Williams was alone in the house, so that no one could come to his assistance. Petitioner's actions at the time of the crime were more consistent with that of a co-conspirator than an innocent bystander and further support the jury's finding that he aided and abetted the robbery. *Davis,* 658 F. 3d at 533.  Third, the fact that Petitioner fled the scene with the gunman supports an inference that he was actively involved in the crime. *Id.*

Finally, "A defendant's 'reactions to the circumstances' of a crime may suggest involvement (or for that matter lack of involvement) with a crime." *Bell v. Jackson*, 379 F. App'x. 440, 446 (6th Cir. 2010).  Although Petitioner claimed to be merely present at the house, he did nothing to stop the unknown assailant from robbing Mr. Williams at gunpoint.

In light of the evidence presented in this case, the Michigan Court of Appeals did not unreasonably apply clearly established federal law in determining that the evidence was sufficient to convict petitioner on an aiding and abetting theory. *See Brown v. Konteh,* 567 F. 3d 191, 209-12 (6th Cir. 2009).  Petitioner is not entitled to habeas relief on his sufficiency of evidence claim.

**B**. **Claims # 2, 3, and 4. The ineffective assistance of counsel claims.**

Petitioner next contends he was denied the effective assistance of trial counsel. Petitioner raised these claims in a *pro se* Supplemental Brief before the Michigan Court of Appeals. [8]

To prevail on his ineffective assistance of counsel claims, Petitioner must show that the state court's conclusion regarding these claims was contrary to, or an unreasonable application of, *Strickland v. Washington*, 466 U.S. 668 (1984). *See Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).  *Strickland* established a two-prong test for claims of ineffective assistance of counsel: the petitioner must show (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. *Strickland,* 466 U.S. at 687.

Petitioner initially contends that his trial counsel was ineffective for failing to subpoena or call several witnesses, including the Mr. Williams' aunt, who was inside the house at the time of the robbery.

Petitioner is not entitled to relief on his claim because he failed to provide to the Michigan courts or to this court an affidavit from the victim's aunt or the other proposed witnesses concerning their proposed testimony and willingness to testify on Petitioner's behalf.  Conclusory allegations of ineffective assistance of counsel, without any evidentiary support, do not provide a basis for habeas relief. *See Workman v. Bell,* 178 F.3d 759, 771 (6th Cir. 1998).  By failing to present any evidence to the state courts in support of his ineffective assistance of claim, Petitioner is not entitled to an evidentiary

---

[8] Standard 4 of Administrative Order 2004-6, 471 Mich. cii (2004), "explicitly provides that a *pro se* brief may be filed within 84 days of the filing of the brief by the appellant's counsel, and may be filed with accompanying motions." *Ware v. Harry,* 636 F. Supp. 2d 574, 594, n. 6 (E.D. Mich. 2008).

hearing on his ineffective assistance of counsel claim with this court. *See Cooey v. Coyle*, 289 F. 3d 882, 893 (6th Cir. 2002)(*citing* 28 U.S.C. § 2254(e)(2)(A)(ii)). Petitioner offered, neither to the Michigan courts nor to this court, any evidence beyond his own assertions as to whether the aunt or these other unnamed witnesses would have been able to testify and what the content of their testimony would have been.  In the absence of such proof, Petitioner is unable to establish that he was prejudiced by counsel's failure to call the victim's aunt or any other witness to testify at trial, so as to support the second prong of an ineffective assistance of counsel claim. *See Clark v. Waller,* 490 F. 3d 551, 557 (6th Cir. 2007).

Moreover, this court would be unable at this point to entertain any affidavits from these witnesses.  The United States Supreme Court has held that habeas review under 28 U.S.C. §2254(d) is "limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). Therefore, *Cullen* would preclude the court from considering any new evidence that the Petitioner would even want to present at this point in support of his ineffective assistance of trial counsel claim under 28 U.S.C. §2254(d). *Cf. Campbell v. Bradshaw*, 674 F.3d 578, 590, n.3 (6th Cir. 2012)(declining to consider testimony taken in federal evidentiary hearing because it was not part of the state court record).  Petitioner presented no evidence to rebut the presumption that counsel's decision to forego calling the victim's aunt or other witnesses was strategic or that the outcome of the trial would have been different had this evidence been presented.

Petitioner's claim that counsel was ineffective for failing to obtain and present a surveillance video from a party store fails for the same reason, namely, he never

presented a copy of this videotape to the Michigan courts or to this court. In the absence of any showing that the contents of this videotape would have exculpated Petitioner, he is not entitled to relief on this claim.

Petitioner next contends that his attorney's cross-examination of the witnesses was somehow defective.  Courts generally entrust cross-examination techniques, like other matters of trial strategy, to the professional discretion of counsel." *Dell v. Straub,* 194 F. Supp. 2d at 651.  "Impeachment strategy is a matter of trial tactics, and tactical decisions are not ineffective assistance of counsel simply because in retrospect better tactics may have been available." *Id.*

The record reflects that defense counsel extensively cross-examined Mr. Williams.  Defense counsel confronted Mr. Williams about the inconsistencies between his statement to the police and his preliminary examination testimony over who took his cell phone from him. Counsel was able to get Mr. Williams to admit at trial that Petitioner did not take his cell phone from him during the robbery.  Counsel was able to get Mr. Williams to admit that his statement to the police, in which he accused Petitioner of taking his cell phone, was not in his own handwriting. Contrary to Petitioner's allegation, counsel asked Mr. Williams about whether he had been convicted in the last ten years of a felony or misdemeanor involving theft, dishonesty or false statement. Mr. Williams was asked if marijuana was sold out of his house.  Although Mr. Williams denied selling marijuana, he admitted in response to counsel's questions that he had $400.00 in his pocket at the time of the robbery even though he was unemployed.  Mr. Williams admitted that he was not sure if Petitioner had walked up to the house with the assailant.  Mr. Williams never saw a weapon in Petitioner's possession.  Counsel even

14

elicited an admission from Mr. Williams that Petitioner became upset when the other man pulled out his gun and made a statement that "I didn't know this was about to happen." (ECF No. 11-10, PageID. 431-49).

Defense counsel also extensively cross-examined shooting victim James Barnes. Counsel elicited an admission from Mr. Barnes that he and Izella Fleming had gone over to Mr. Williams' house to purchase marijuana. Mr. Barnes admitted he had never met Mr. Williams prior to that day. While Mr. Williams was in Mr. Barnes' car, he never mentioned the name "Dirt," i.e. Petitioner's nickname. Counsel confronted Mr. Barnes with the fact that he took a total stranger in his car and chased down individuals armed with a gun. Although Mr. Barnes claimed he did not have a firearm in his motor vehicle, counsel confronted him with the fact that a semi-automatic pistol was recovered from the floorboard behind the front passenger seat. Although Mr. Barnes claimed the original idea was to follow the vehicle that Petitioner was in to get the license plate, he instead attempted to cut the car off with his motor vehicle. Mr. Barnes was confronted with the fact that at the preliminary examination he testified he only heard gunshots from the other vehicle and that it was only at trial that he testified that he saw a flash coming from the other car. When Mr. Barnes testified that he did not recall hearing gunshots coming from his own car, counsel confronted him with his prior statement to the police, in which he stated he had heard gunshots coming from inside his vehicle. Mr. Barnes admitted he did not know who shot at him. (ECF No. 11-10, PageID. 462-70).

Counsel questioned Izella Fleming and got her to admit she did not know what transpired inside of Mr. Williams' house. She admitted she did not see Petitioner in possession of a gun when he exited Mr. Williams' house. Ms. Fleming admitted she

had purchased marijuana from Mr. Williams in the past.  She admitted she was at the house that day to buy some marijuana.  Ms. Fleming admitted she could not identify who shot at Mr. Barnes' vehicle. (ECF No. 11-10, PageID. 482-86).

The record reflects that defense counsel extensively questioned the victims in this case.  Defense counsel did not perform ineffectively by not further cross-examining the witnesses in this case, particularly when the effect of additional probing was entirely speculative on Petitioner's part. *See Jackson v. Bradshaw,* 681 F.3d 753, 764-65 (6th Cir. 2012).

Petitioner in his third claim alleges that his trial counsel was laboring under a conflict of interest because he brought up to the trial court that he knew one of the complaining witnesses.  Petitioner argues that the trial judge erred in failing to inquire more into the nature of defense counsel's prior relationship with the witness.

The Michigan Court of Appeals rejected the claim:

In this case, defense counsel addressed his conflict on the record, stating, "I just wanted to disclose to the Court [that] I just found out that I know one of the complaining witnesses. I'm duty bound to disclose that to you and my client as well." Defense counsel did not elaborate, and the trial court did not press defense counsel regarding the nature of the conflict. Defendant continued to allow defense counsel, who was retained, to represent him at trial. Defendant does not specifically elaborate on the nature of the alleged conflict in this Court, neglecting to explain the nature of the relationship, the extent of the relationship, or even which complaining witness defense counsel knew. Without this information, any determination that defense counsel's representation of defendant was adversely affected because he knew a complaining witness is speculative. A conflict of interest cannot be presumed or implied and "[t]o warrant reversal, the prejudice shown must be actual, not merely speculative." Defendant has failed to make any showing that defense counsel simply knowing a complaining witness created an actual conflict of interest. Further, regardless of whether an actual conflict existed, defendant further fails to demonstrate in what way

defense counsel's performance was impacted, or how the conflict directly lessened his defense.

*People v. Evans*, 2018 WL 442852, at * 5 (internal citations omitted).

The Supreme Court has recognized that in certain Sixth Amendment contexts, prejudice is presumed. *Strickland,* 466 U.S. at 692.  The "actual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice.  So are various kinds of state interference with counsel's assistance." *Id.*  The *Strickland* court further noted that there was one type of ineffective assistance of counsel claim that warranted a "similar, though more limited, presumption of prejudice", namely, cases involving an actual conflict of interest that adversely affects counsel's performance. *Id.* This reference was to the Supreme Court's ruling in *Cuyler v. Sullivan,* 446 U.S. 335, 348-49 (1980), where the Supreme Court held that in order to establish a Sixth Amendment violation resulting from the joint representation of multiple defendants by a single attorney, a defendant who fails to object at trial must demonstrate that an actual conflict of interest exists that adversely affected his attorney's performance.

To demonstrate a Sixth Amendment violation where a trial court fails to inquire into a potential conflict of interest about which it knew or reasonably should have known, a defendant must establish that a conflict of interest adversely affected counsel's performance. *Mickens v. Taylor,* 535 U.S. 162, 172-74 (2002).  The Supreme Court based its decision in *Mickens* in part on the *Sullivan* case, which as noted above, involved a Sixth Amendment violation arising from the joint representation of multiple defendants by a single attorney.  The case in *Mickens*, however, did not involve a conflict of interest based upon multiple representation, but rather, successive representation, where the defendant's attorney had previously represented the murder

17

victim in a juvenile court proceeding.  Although noting that the *Sullivan* rule had been

applied "unblinkingly" to various kinds of conflicts of interest that did not involve multiple

representation, the Supreme Court noted that the language in *Sullivan* "does not clearly

establish, or indeed even support, such expansive application." *Id.* at 175.  The

Supreme Court further noted that *Sullivan* and the Supreme Court's earlier case of

*Holloway v. Arkansas*, 435 U.S. 475 (1978) "stressed the high probability of prejudice

arising from multiple representation, and the difficulty of proving that prejudice." *Id*.

However, the Supreme Court in *Mickens* noted that "[N]ot all attorney conflicts present

comparable difficulties" and concluded that it remained an "open question" whether

*Sullivan* should be extended to cases other than multiple representation. *Id.* at 176.

      In the aftermath of *Mickens,* the Sixth Circuit has indicated a reluctance to apply

the *Sullivan* rule to conflicts of interest that do not involve multiple representation.  In

*Smith v. Hofbauer,* 312 F. 3d 809, 817 (6th Cir. 2002), the Sixth Circuit held that a

habeas petitioner was not entitled to use *Sullivan's* lesser standard of proof for an

ineffective assistance of counsel claim that arose from a conflict of interest other than

multiple representation.

      Other cases have reached similar conclusions. *See McElrath v. Simpson,* 595 F.

3d 624, 631, n. 7 (6th Cir. 2010) ("The [Supreme] Court in *Mickens* clarified that, for

purposes of review under AEDPA, its clearly established precedent has not applied the

*Sullivan* standard outside the context of a counsel's concurrent representation of more

than one defendant"); *Harrison v. Motley,* 478 F.3d 750, 756, 57 (6th Cir. 2007) (neither

*Sullivan* nor *Holloway* applied to the petitioner's claim that his lawyers had a conflict of

interest in representing him based on their fears of criminal prosecution and malpractice

for witness tampering); *Stewart v. Wolfenbarger*, 468 F. 3d 338, 351 (6th Cir.2006) ("This Court has consistently held that, for Section 2254 cases, the *Sullivan* standard does not apply to claims of conflict of interest other than multiple concurrent representation; in such cases, including successive representation, the *Strickland* standard applies."); *Whiting v. Burt,* 395 F. 3d 602, 619 (6th Cir. 2005) (presumed prejudice standard is inapplicable to an attorney's alleged conflict from representing the petitioner at trial and on appeal); *United States v. Moss,* 323 F. 3d 445, 473, n. 25 (6th Cir. 2003) ("As we have discussed, *supra,* the *Mickens* rationale compels our strong hesitation to apply *Sullivan* to conflicts of interest cases arising outside of the joint representation context").

In this case, expanding the presumed prejudice standard of *Cuyler v. Sullivan* "beyond its present borders of multiple concurrent representation would result in the creation of a new rule of law--one that clearly has not been dictated by prior Supreme Court precedent." *Whiting,* 395 F. 3d at 619-20.

As the Michigan Court of Appeals noted, Petitioner failed to make a record or offer proof concerning which of the complaining witnesses that counsel was referring to or the extent of their prior relationship.

In *Lordi v. Ishee*, 384 F.3d 189, 193 (6th Cir. 2004), the Sixth Circuit held that a habeas petitioner's counsel's law partner's previous representation of a prosecution witness in an unrelated matter and counsel's subsequent cross-examination of that witness at trial presented merely a case of a potential conflict of interest due to successive representation that never ripened into an actual conflict in violation of defendant's right to the effective assistance of counsel.  The Sixth Circuit concluded that

the Ohio courts appropriately applied the *Strickland* standard in rejecting Petitioner's ineffective assistance of counsel claim. *Id.*

In *Benge v. Johnson*, 474 F.3d 236, 244-45 (6th Cir. 2007), the Sixth Circuit held that the state appellate court's ruling that defense counsel's concurrent representation of a potential prosecution witness in an unrelated drug case did not amount to a conflict of interest was not contrary to clearly established federal law, as required to support a claim for federal habeas relief.  The Court concluded that the state court properly applied the *Strickland* standard and not *Cuyler* in rejecting the petitioner's conflict of interest claim. *Id.*

In the present case, Petitioner's conflict of interest does not result from multiple concurrent representation of joint defendants at the same trial.  This court concludes that the presumed prejudice standard enunciated in *Cuyler v. Sullivan* is inapplicable to Petitioner's ineffective assistance of trial counsel claim.  Instead, the proper standard would be the *Strickland* standard, in which Petitioner would have to demonstrate that he was actually prejudiced by counsel's alleged conflict of interest.  Petitioner has made no such showing; he is not entitled to relief on this claim.

### C.  Claim # 5. The suggestive identification claim.

Petitioner next claims that that the police used an unduly suggestive identification procedure by showing a single photograph of petitioner to Mr. Williams.  In the

alternative, Petitioner argues that trial counsel was ineffective for failing to move to suppress Mr. Williams' in-court identification of Petitioner.

Respondent argues that this claim and Petitioner's remaining claims are procedurally defaulted because Petitioner failed to properly preserve these claims before the trial court. Petitioner argues in his remaining claims that trial counsel was ineffective for failing to object or preserve the issue. Ineffective assistance of counsel may establish cause for procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000). Given that the cause and prejudice inquiry for the procedural default issue merges with an analysis of the merits of the defaulted claims, it would be easier to consider the merits of the claims. *See Cameron v. Birkett,* 348 F. Supp. 2d 825, 836 (E.D. Mich. 2004).

The Michigan Court of Appeals rejected Petitioner's claim:

> At trial Williams testified that the police only showed him one photograph of defendant during his interview, and that he identified defendant from this photograph. Even if we accepted defendant's contention that this amounts to an impermissibly suggestive identification procedure, the prosecution presented ample clear and convincing evidence that Williams could sufficiently make an independent identification of defendant. Notably, Williams testified that defendant was a family friend, and although they had never "hung out," Williams had seen defendant for years around the neighborhood and was well familiar with him. Williams was even able to identify defendant by his street name: "Dirt." Therefore, the prosecution presented a sufficient independent basis for Williams's in-court identification of defendant.

*People v. Evans*, 2018 WL 442852, at * 6.

Due process protects the accused against the introduction of evidence which results from an unreliable identification obtained through unnecessarily suggestive procedures. *Moore v. Illinois*, 434 U.S. 220, 227 (1977). To determine whether an

identification procedure violates due process, courts look first to whether the procedure

was impermissibly suggestive; if so, courts then determine whether, under the totality of

circumstances, the suggestiveness has led to a substantial likelihood of an irreparable

misidentification. *Kado v. Adams*, 971 F. Supp. 1143, 1147-48 (E.D. Mich. 1997) (citing

to *Neil v. Biggers*, 409 U.S. 188 (1972)).  Five factors should be considered in

determining the reliability of identification evidence:

> 1. the witness's opportunity to view the criminal at the time of the crime;
> 2. the witness's degree of attention at the time of the crime;
> 3. the accuracy of the witness's prior description of the defendant;
> 4. the witness's level of certainty when identifying the suspect at the confrontation; and,
> 5. the length of time that has elapsed between the time and the confrontation.

*Neil v. Biggers,* 409 U.S. at 199-200.

If a defendant fails to show that the identification procedures are impermissibly

suggestive, or if the totality of the circumstances indicate that the identification is

otherwise reliable, no due process violation has occurred; so long as there is not a

substantial misidentification, it is for the jury or factfinder to determine the ultimate

weight to be given to the identification. *See United States v. Hill*, 967 F.2d 226, 230 (6th

Cir. 1992).

Although identifications which result from single-photograph displays are viewed

in general with suspicion, the totality of the circumstances may nevertheless negate the

"corrupting effect of the suggestive identification," particularly where the witness knows

the defendant. *United States v. Simmons*, 633 F. App'x. 316, 320–21 (6th Cir. 2015)

(citing and quoting *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977)); *See also  United*

*States v. Shields*, 415 F. App'x. 692, 702–03 (6th Cir. 2011) (use of single-photograph

was not impermissibly suggestive where witnesses saw the defendant "numerous times prior to being shown the photograph").  "Witnesses may have difficulty observing and later identifying a stranger, but they "'are very likely to recognize ... the people in their lives with whom they are most familiar, and any prior acquaintance with another person substantially increases the likelihood of an accurate identification.'" *Simmons*, 633 F. App'x. at 321.

The Michigan Court of Appeals reasonably concluded that the single photograph lineup was not unduly suggestive, in light of the fact that Mr. Williams had known Petitioner for years.  Petitioner is not entitled to habeas relief on his suggestive identification claim.

Petitioner failed to show that the photographic lineup procedure was unduly suggestive, thus, he failed to show that his lawyer was ineffective for failing to move for suppression of the pre-trial identification. *See Searcy v. Berghuis,* 549 F. App'x. 357, 365 (6th Cir. 2013).

### D.  Claim # 6. The perjury claim.

Petitioner claims that the prosecutor knowingly allowed Mr. Williams to commit perjury in this case.  Alternatively, he argues that counsel was ineffective for failing to object.

The deliberate deception of a court and jurors by the presentation of known and false evidence is incompatible with the rudimentary demands of justice. *Giglio v. United States*, 405 U.S. 150, 153 (1972).  There is also a denial of due process when the prosecutor allows false evidence or testimony to go uncorrected. *Napue v. Illinois*, 360

23

U.S. 264, 269 (1959) (internal citations omitted). To prevail on a claim that a conviction was obtained by evidence that the government knew or should have known to be false, a defendant must show that the statements were actually false, that the statements were material, and that the prosecutor knew they were false. *Coe v. Bell*, 161 F. 3d 320, 343 (6th Cir. 1998). However, a habeas petitioner must show that a witness' statement was "indisputably false," rather than misleading, to establish a claim of prosecutorial misconduct or a denial of due process based on the knowing use of false or perjured testimony. *Byrd v. Collins*, 209 F. 3d 486, 517-18 (6th Cir. 2000).

Petitioner only points to inconsistencies between Mr. Williams' trial testimony and his statement to the police and the fact that Mr. Williams admitted that he did not write his statement to the police but that a police officer did. Mere inconsistencies in a witness' testimony do not establish the knowing use of false testimony by the prosecutor. *Coe*, 161 F. 3d at 343. Additionally, the fact that a witness contradicts himself or herself or changes his or her story also does not establish perjury either. *Malcum v. Burt,* 276 F. Supp. 2d 664, 684 (E.D. Mich. 2003) (citing *Monroe v. Smith*, 197 F. Supp. 2d 753, 762 (E.D. Mich. 2001)). Conclusory allegations of perjury in a habeas corpus petition must be corroborated by some factual evidence. *Barnett v. United States*, 439 F.2d 801, 802 (6th Cir. 1971). Petitioner presented no evidence to establish that Mr. Williams deliberately lied, hence, he is not entitled to relief on this claim.

Petitioner has failed to show that Mr. Williams committed perjury, thus, counsel was not ineffective for failing to challenge any of this testimony on the ground that it was perjured. *Brown v. Burt*, 65 F. App'x. 939, 942 (6th Cir. 2003).

### E.  Claim #  7. The jail clothing claim.

Petitioner lastly claims that he was forced to go to trial in jail clothing.  In the alternative, he argues that trial counsel was ineffective for failing to object to Petitioner being forced to trial in jail clothing.

The Michigan Court of Appeals concluded that Petitioner waived this claim. Counsel did on the first day of trial bring to the trial court's attention that Petitioner did not have clean civilian clothing to wear during trial. The trial judge instructed defense counsel to obtain clean civilian clothing for Petitioner and adjourned trial until the following morning.  The Michigan Court of Appeals noted that on the second day of trial, neither Petitioner nor his defense counsel made any further mention of the fact that Petitioner was still dressed in his jail uniform or object to him being so attired. The Michigan Court of Appeals stated that the "failure to raise a timely objection to wearing a jail uniform as opposed to civilian clothing 'waives any defects as to a defendant's appearance before the jury,' and a 'prisoner who voluntarily *chooses* to stand trial in jail clothing cannot be heard to complain on appeal.'" *People v. Evans*, 2018 WL 442852, at * 8 (quoting People v. Harris, 80 Mich. App. 228, 230; 263 N.W.2d 40 (1970) (emphasis original).  The Michigan Court of Appeals concluded:

> From our review of the record, it can be logically inferred that where both defendant and defense counsel failed to raise the issue of defendant not having civilian clothing on the second day of trial, after defense counsel was instructed by the trial court to obtain civilian clothing for defendant, defendant voluntarily chose to wear his jail uniform. Accordingly, we are satisfied that any "defect" concerning defendant's "appearance before the jury" has been waived.
>
> *People v. Evans*, 2018 WL 442852, at * 8.

25

Waiver is an "'intentional relinquishment of a known right.'" *United States v. Olano*, 507 U.S. 725, 733 (1993) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). A criminal defendant who has waived his rights "may not then seek appellate review of claimed deprivation of those rights, for his waiver has extinguished any error." *United States v. Griffin*, 84 F.3d 912, 924 (7th Cir. 1996)(citing *Olano*, 507 U.S. at 733-34). *See also Shahideh v. McKee*, 488 F. App'x. 963, 965 (6th Cir. 2012) ("waiver is a recognized, independent and adequate state law ground for refusing to review alleged trial errors").

The United States Supreme Court has held that although a defendant cannot be forced to go to trial in a prison or jail uniform, that claim can be waived by the failure to object:

> Accordingly, although the State cannot, consistently with the Fourteenth Amendment, compel an accused to stand trial before a jury while dressed in identifiable prison clothes, the failure to make an objection to the court as to being tried in such clothes, for whatever reason, is sufficient to negate the presence of compulsion necessary to establish a constitutional violation.
>
> *Estelle v. Williams*, 425 U.S. 501, 512–13 (1976).

Petitioner did not object to proceeding to trial in jail clothing, thus, he has waived this claim on habeas review.

Petitioner in the alternative argues that trial counsel was ineffective for failing to object to him proceeding to trial in his jail uniform.  However, in light of the compelling evidence against Petitioner in this case, the failure of trial counsel to provide Petitioner with civilian clothing or object to Petitioner being brought to trial in a jail uniform did not prejudice Petitioner, as required to show ineffective assistance of counsel, given the lack of reasonable possibility that a jury would have acquitted Petitioner if he had

26

appeared at trial in civilian garb. *See Hill v. Mitchell*, 400 F.3d 308, 320–21 (6th Cir.

2005).  Petitioner is not entitled to relief on his seventh claim.

### F.  A certificate of appealability.

Before Petitioner may appeal this decision, a certificate of appealability ("COA")

must issue. See 28 U.S.C. § 2253(c)(1)(a); Fed. R.App. P. 22(b).  A COA may issue

"only if the applicant has made a substantial showing of the denial of a constitutional

right." 28 U.S.C. § 2253(c)(2).  When a court denies a habeas claim on the merits, the

substantial showing threshold is met if the petitioner demonstrates that reasonable

jurists would find the court's assessment of the claim debatable or wrong. See *Slack v.*

*McDaniel*, 529 U.S. 473, 484–85 (2000).  "A petitioner satisfies this standard by

demonstrating that ... jurists could conclude the issues presented are adequate to

deserve encouragement to proceed further." *Miller–El v. Cockrell*, 537 U.S. 322, 327

(2003).  In applying this standard, a court may not conduct a full merits review, but must

limit its examination to a threshold inquiry into the underlying merits of the claim. *Id.* at

336–37.  Having considered the matter, the court concludes that Petitioner has not

made a substantial showing of the denial of a constitutional right as to his habeas

claims.  Accordingly, the court will deny Petitioner a certificate of appealability.

### IV. CONCLUSION

IT IS ORDERED that Adaire Carvane Evans' petition for writ of habeas corpus

(ECF 1) is DENIED and the court DECLINES to issue a certificate of appealability.

      s/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  September 19, 2022

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, September 19, 2022, by electronic and/or ordinary mail.

 S/Lisa Wagner
Case Manager and Deputy Clerk
(810) 292-6522

S:\Cleland\Cleland\CHD\2254\19-12801.EVANS.DenyRelief.db.docx